**In re Stephen Brian TURNER, etc., Debtor.**

**John T. Kendall, Chapter 7, Plaintiff,**

v.

**Susana C. Turner, et al., Defendant.**

**Ah Beng Yeo and E.A. Martini, Plaintiff,**

v.

**Stephen Brian Turner, M.D., etc., Defendant.**

**Bankruptcy No. 02–44874 TK.**
**Adversary Nos. 02–7273 AT, 02–7298 AT.**

United States Bankruptcy Court, N.D. California.

June 29, 2006.

Drew Henwood, Law Offices of Drew Henwood, San Francisco, CA, for Debtor.

## MEMORANDUM OF DECISION ON MOTION TO AMEND JUDGMENT OR FOR NEW TRIAL

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

On or about December 5, 2005, the Court issued a Memorandum of Decision After Trial (the "Decision") in the above-captioned adversary proceedings which were consolidated for trial. Judgment (the "Judgment") was entered on or about January 19, 2006. In the Decision, the Court held, among other things, that the transfer of certain real property located in Hayward, California (the "House") by a Nevada limited partnership ("RICH") in 2001 (the "2001 Transfer") to defendant Susana Turner ("Susana") was avoidable as a fraudulent transfer pursuant to 11 U.S.C. § 548 because RICH was the debtor Stephen Turner's (the "Debtor") alter ego.

On January 26, 2006, Susana and Stephen Turner (the "Turners") filed a motion for reconsideration and/or for a new trial (the "Reconsideration Motion"). In accordance with the Court's normal procedures, the Court reviewed the Reconsideration Motion for merit before permitting an opposition to be filed. As set forth in a memorandum filed on February 10, 2006 (the "New Trial Motion Memo"), the Court concluded that the Reconsideration Motion had some merit as to two issues and therefore set a briefing schedule for an opposi-

tion and reply. No hearing was scheduled. The Court has now reviewed the New Trial Motion, the opposition, and the reply. Its findings and conclusions are set forth below.

## DISCUSSION

### A. APPLICABLE LAW

■ As noted above, Susana moves for reconsideration and/or for a new trial. She bases her motion on Rule 59(a) and on Rule 60(b) of the Federal Rules of Civil Procedure. Rule 59(a) permits a new trial to be granted for any reason for which rehearings are granted in suits in equity in federal courts.[1] Rule 60(b) permits judgments to be amended based on mistake of law or fact. When a proceeding has been tried to the court as opposed to a jury, the court has broad discretion in deciding whether to grant or deny such motions. *See Simons v. Gorsuch*, 715 F.2d 1248, 1253 (7th Cir.1983); *Matter of Barry Yao Co.*, 175 F.Supp. 726, 729 (S.D.Cal.1959).

### B. DECISION

The two issues raised in the New Trial Motion that the Court held had sufficient merit to warrant further briefing were: (1) whether the Court erred by treating RICH as the Debtor's alter ego and (2) whether the Court's conclusion that the 2001 Transfer was avoidable as a fraudulent transfer pursuant to 11 U.S.C. § 548 was erroneous because the grant deed executed in 2001, purporting to transfer the House from RICH to Susana, was invalid.

The Court addresses each of these issues below.

### 1. ALTER EGO ISSUE

■ In the Decision, the Court held that RICH was the Debtor's alter ego. As a result, the Court held, the grant deed executed in 2001 by RICH (the "2001 Deed") constituted a transfer by the Debtor within one year of the Debtor's bankruptcy filing. As a result, because the Court found that the 2001 Transfer was actually and constructively fraudulent, the Court held that the 2001 Transfer could be avoided pursuant to 11 U.S.C. § 548.[2]

The Turners contend that the Court committed legal and/or factual error in making this determination. They argue that an individual cannot be held an alter ego of an entity if he is not a shareholder or owner of the entity. In support of this contention, they cite *Securities and Exchange Comm'n v. Hickey*, 322 F.3d 1123, 1128–1129 (9th Cir.2003). They contend that no evidence was presented that the Debtor owned RICH. To the contrary, they contend, it was undisputed that RICH was owned by the Golden Gate Trust (the "GG Trust") of which the Debtor's children were the purported beneficiaries.

The Court permitted opposition to be filed with respect to this issue because it was not certain whether the alter ego theory had been alleged in the complaint. As a result, this legal issue might not have been adequately briefed in the trial briefs. In opposition, the plaintiffs cited language from the first amended complaint making

---

**1.** Rule 59(b) requires such motions to be filed within 10 days from the date of entry of judgment. The Reconsideration Motion was filed on a timely basis.

**2.** In their reply, the Turners complained that the plaintiffs had not responded to their objection that, even if the transfer were fraudu-

lent, it would constitute an unconscionable penalty to avoid the transfer in its entirety. The Court finds that there was no need for the Trustee to address this issue since it was not one of the two issues that the Court found had sufficient merit to warrant filing of an opposition.

reference to this legal theory. The Court concludes that the Turners had adequate notice that the plaintiffs were asserting an alter ego theory. In any event, pursuant to this motion, the Turners have had an adequate opportunity to assert their legal position in this respect.

The Court concludes that the Turners have failed to provide any compelling or persuasive authority causing the Court to modify its conclusion that RICH was the Debtor's alter ego. In the Reconsideration Motion, they appear to contend that, because Stephen Turner was not not *named* as the owner of RICH, he cannot be held it its alter ego (even if the evidence persuades the Court that he actually is its owner). The Court does not read the law in this limiting fashion.

■ As stated in *Hickey,* under California law, only two things must be established to support a finding of alter ego: (1) a unity of interest and ownership such that the person and the entity cannot fairly be considered separate and (2) adherence to the fiction of the separate existence of the entity and the individual would work an injustice. 322 F.3d at 1128–29. The evidence presented during at trial satisfied both of these prongs. As a result, the Court denies the Turners' request to reconsider its conclusion or to conduct a new trial on this issue.

## 2. INVALIDITY OF DEED

■ The Turners also contend that the Court erred in finding that the 2001 Transfer was avoidable as a fraudulent transfer. They assert that the 2001 Deed was not properly executed and therefore did not effect a valid transfer. The Turners excuse their failure to present evidence on this issue at trial on the ground that the Court had previously indicated that the critical transfer occurred in 1998. They make an offer of proof that the 2001 Deed was executed in the Bahamas and was merely notarized. They note that section 1183 of the California Civil Code requires a deed as to real property executed outside the United States to be acknowledged by a consul, judge, or commissioner or the like. According to the Turners, since the 2001 Deed did not effect a transfer, the 2001 Transfer may not be avoided as a fraudulent transfer under 11 U.S.C. § 548.

In response, the plaintiffs express surprise at this concession since, they contend, Susana's claim to the House relies on the 2001 Deed. According to the plaintiffs, if the 2001 Deed is invalid, as the Turners now concede that it is, Susana has no basis for claiming ownership of the House. The Court agrees. The Court has previously ruled against Susana with respect to the other bases for her claim of ownership of the House. However, given this concession, the Court believes that the judgment should be modified to reflect this new basis for its ruling.

If the 2001 Transfer was invalid, the House remained the property of RICH at the time the bankruptcy was filed. Since the Court has held that RICH is the Debtor's alter ego, this means that the House was the Debtor's property and thus is property of the estate in its entirety. The plaintiffs are directed to submit a proposed form of judgment in accordance with this decision.[3]

**3.** The Turners also contend that the Court erred by concluding that the House was the Debtor's separate property based on the assumption that their dissolution judgment is final. In fact, they contend, the judgment is on appeal. The Court did not permit opposition to be filed with respect to this issue. In any event, the Court concludes that this argument has no merit. The appeal from the dissolution judgment does not relate to either the termination of the Turners' marital relationship or to the division of their property.

## CONCLUSION

The Court denies the Turners' request to alter its legal conclusion that RICH was the alter ego of the Debtor. The alter ego theory was adequately alleged in the plaintiffs' first amended complaint. The evidence presented at trial persuaded the Court that, regardless of what the documents prepared by or at the direction of the Debtor said, the Debtor was the true owner of RICH. Plaintiffs are directed to submit a proposed form of order denying the Reconsideration Motion in this respect.

The Turners now concede that the 2001 Deed was not properly executed and thus did not effect a valid transfer. As a result, they contend, the Court's prior ruling—that the 2001 Transfer should be avoided as a fraudulent transfer pursuant to 11 U.S.C. § 548—is clearly erroneous. The Court agrees that this new concession requires a modification of the judgment. As a result of the faulty execution of the 2001 Deed, the House remained the nominal property of RICH and thus actually the property of the Debtor at the time the bankruptcy was filed. Thus, the House was and is property of the Debtor's bankruptcy estate in its entirety. The plaintiffs are directed to submit a proposed form of amended judgment in accordance with this decision.

Moreover, even if their dissolution were not final, this would not change the outcome of the dispute in any substantial respect. If the property division were not final at the time of the bankruptcy filing, the House would be the Turners' community property. With limited exceptions not applicable here, all community property becomes property of the estate even if only one of the spouses files a bankruptcy petition. *See* 11 U.S.C. § 541(a)(2).