**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-17-1353-FLS |
| PRADEEP SINGH and RINDI P. SINGH, | Bk. No. 6:14-bk-19919-SC |
| Debtors. | Adv. Pro. 6:15-ap-1008-SC |
| PRADEEP SINGH, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| RINDI P. SINGH; UNITED STATES TRUSTEE, | |
| Appellees. | |

Submitted Without Argument on February 21, 2019

Filed – March 14, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Scott C. Clarkson, Bankruptcy Judge, Presiding

─────────

Appearances:     Appellant Pradeep Singh, pro se, on brief; Ramona D.
                 Elliott, P. Matthew Sutko, Robert J. Schneider, Jr., Peter C.
                 Anderson, Russell Clementson, and Everett L. Green on
                 brief for appellee United States Trustee for Region 16.

─────────

Before: FARIS, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Pradeep Singh appeals from the bankruptcy court's denial of his discharge under §§ 727(a)(2)(A) and (a)(4). Mr. Singh argues that the bankruptcy court erred when it determined that his corporation's transactions were attributable to him personally and that he was operating a Ponzi scheme. He contends that he did not hide any transaction or make false oaths. He also claims that the bankruptcy court abused its discretion in making various pretrial and evidentiary rulings against him.

We discern no error and AFFIRM.

───────────────

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

# FACTUAL BACKGROUND[2]

## A.    Mr. Singh's business ventures

PradeepSingh Corporation, dba Secure Vision Associates ("SVA") sold insurance, annuities, and various insurance-based products. Mr. Singh was SVA's president, chief executive officer, chief financial officer, and majority shareholder. Mr. Singh's wife, co-debtor Rindi Singh, was SVA's secretary. The Singhs and their son were the sole shareholders of SVA.

Beginning in 2001, SVA stopped complying with many corporate formalities. SVA did not hold required shareholder meetings or board of directors meetings and did not prepare corporate meeting minutes.

Mr. Singh held a license to sell life and health insurance in California but was not licensed to sell securities. Nevertheless, between 2002 and 2014, he persuaded dozens of his customers and other individuals to give him money through SVA. He directed them to make the checks payable to SVA. Those individuals received promissory notes that promised repayment plus interest at above-market rates.[3]

SVA conducted most of its business with American Equity

---

[2] We borrow from the bankruptcy court's detailed ruling. We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

[3] The promissory notes identified the borrower as "the undersigned Pradeep Singh president of Secure Vision Associates . . . ." But the signature line identified the borrower as SVA, with Mr. Singh signing on its behalf.

Investment Life Insurance Company ("American Equity"). In 2013, American Equity began receiving complaints from consumers that Mr. Singh and SVA had solicited money from them. Even after American Equity cautioned Mr. Singh that his actions violated company policy, Mr. Singh continued to solicit funds from individuals.

American Equity terminated its contract with SVA in June 2014. A second insurance company also terminated its contract with SVA due to similar complaints. Mr. Singh lost all of his commission-based income and could no longer repay any of the individuals who had given him money.

Mr. Singh dissolved the PradeepSingh Corporation in July 2014.

## B.     The Singhs' chapter 7 petition

On August 4, 2014, the Singhs filed their joint chapter 7 petition. They did not disclose loans that they allegedly made to SVA or prepetition payments received from SVA.

Six of the individuals who had given money to SVA at Mr. Singh's request initiated adversary proceedings against the Singhs seeking denial of discharge of their debts under § 523. In response to a complaint filed by creditor Carol Taylor, Mr. Singh asserted as an affirmative defense his right to recover funds from Ms. Taylor pursuant to the doctrine of usury and a right to offset.

## C.     The U.S. Trustee's adversary proceeding

Appellee United States Trustee for Region 16 ("U.S. Trustee") filed an

adversary proceeding seeking to deny the Singhs discharge under §§ 727(a)(2)(A), (a)(4), and (a)(5). He alleged that SVA was the alter ego of the Singhs, who used SVA to shield themselves against personal liability and further their fraudulent scheme. He claimed that Mr. Singh solicited investments from individuals as a part of a Ponzi scheme and funneled the funds through SVA, while both the Singhs and SVA were insolvent. In order to pay the earlier investors and keep his scheme going, he solicited funds from new investors. The U.S. Trustee alleged that Mr. Singh repaid investors $400,000 (including $31,000 to himself) in the year preceding the petition date.

The U.S. Trustee represented that the Singhs had failed to disclose prepetition payments from SVA to Mr. Singh. The U.S. Trustee also alleged that he discovered undisclosed bank accounts.

Accordingly, the U.S. Trustee asserted a § 727(a)(2)(A) claim based on the Singhs' transfer of money to and from SVA (their alter ego) for the purpose of hindering, delaying, and defrauding creditors. The U.S. Trustee also brought a § 727(a)(4) claim because the Singhs made false oaths by failing to disclose loans that they had made to SVA and prepetition payments that they received from SVA. Finally, he asserted a § 727(a)(5) claim because the Singhs failed to explain the loss of certain assets.

Mr. Singh denied the substance of the U.S. Trustee's allegations, disputing that he ever engaged in investment activity; rather, he asserted

that the money that he received from clients were loans memorialized by promissory notes. He also denied that he was involved in a Ponzi scheme.

## D. Pretrial matters

### 1. The deemed admissions

In April 2016, Mr. Singh filed a motion for summary judgment, relying on purported admissions by the U.S. Trustee. The U.S. Trustee had served his responses to Mr. Singh's requests for admissions six days after an extended deadline.

The U.S. Trustee filed a motion to withdraw the deemed admissions. He stated that his counsel had requested a seven-day extension to respond, and Mr. Singh's counsel agreed. When the week had passed, the U.S. Trustee's counsel informed Mr. Singh's counsel that he needed another seven days to obtain his client's approval and said, "Please let me know if this presents a problem." Mr. Singh's counsel did not respond, and the U.S. Trustee served his responses six days later.

The U.S. Trustee argued that Mr. Singh was not prejudiced by the six-day delay because the court extended the discovery cut-off date and expert cut-off date. Additionally, Mr. Singh had received the responses over six months prior to the close of fact discovery.

The U.S. Trustee also argued that many of the requests for admissions were improper, as they requested legal admissions and were not intended to aid in discovery. As such, withdrawing the admissions

would allow for the presentation of the case on the merits.

In opposition, Mr. Singh argued that the U.S. Trustee's failure earlier to withdraw the admissions made him feel "secure and confident in relying upon them for his defense; therefore he [did] not engage in compelling additional discovery, including expert depositions."

The bankruptcy court granted the U.S. Trustee's motion to withdraw the admissions, holding that "reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice in this instance." The court allowed the U.S. Trustee to serve revised responses by May 31, 2016. It reopened discovery "to permit non-redundant discovery to be conducted by Singh, solely with respect to any received Answers to Admissions, through and including August 13, 2016." It denied without prejudice the motion for summary judgment.

### 2. Summary judgment

Mr. Singh filed another motion for summary judgment, arguing that the U.S. Trustee had no standing to assert alter ego and that this necessarily defeated all of his claims. Additionally, he argued that the U.S. Trustee failed to establish factual bases for his claims.

The bankruptcy court denied Mr. Singh's motion for summary judgment without a hearing, holding that the U.S. Trustee was not precluded from asserting alter ego and that there were triable factual issues relating to the §§ 727(a)(2)(A), (a)(4), and (a)(5) claims.

### 3. Joint amended pretrial stipulation

On March 8, 2017, the parties filed a joint amended pretrial stipulation. The U.S. Trustee did not give notice that he intended to rely on the omission of Mr. Singh's usury defense against Ms. Taylor as a false oath. The bankruptcy court approved the pretrial stipulation.

### 4. Motion in limine

Mr. Singh filed a motion in limine to exclude the expert report and testimony of the U.S. Trustee's expert accountant, Hakop Jack Arutyunyan. He argued that Mr. Arutyunyan's expert report was inaccurate and unreliable because it did not include supporting data or exhibits and the expert had only consulted limited materials. Additionally, he questioned Mr. Arutyunyan's qualification as an expert because he was employed by the U.S. Trustee and had not previously testified as an expert.

The bankruptcy court denied the motion in limine.

## E. Trial and memorandum decision

The bankruptcy court conducted a five-day trial on the U.S. Trustee's § 727 complaint. The Singhs testified, as well as three of the alleged victims, the chapter 7 trustee, the U.S. Trustee's bankruptcy auditor, and the parties' expert witnesses. The investors testified that Mr. Singh convinced them to give him substantial sums of money for investment in the stock market or other ventures and that he guaranteed them a high rate of return. Although they received promissory notes, he led them to believe that he

was investing their money.

The U.S. Trustee's expert, Mr. Arutyunyan, testified as to two primary conclusions: that SVA was insolvent and that Mr. Singh was operating a Ponzi scheme. He testified that he was not able to account for approximately $117,000 that went into SVA's bank account.

Mr. Singh maintained that he did not engage in a Ponzi scheme or make a false oath. Mr. Singh's sister testified that she had reconciled the bank and credit card accounts and accounted for all of the loan proceeds. Mr. Singh's expert witness, Peter Salomon, opined that his business dealings did not constitute a Ponzi scheme.

The bankruptcy court issued its memorandum decision in favor of Mrs. Singh on all counts, but found against Mr. Singh on the U.S. Trustee's §§ 727(a)(2) and (a)(4) claims.

### 1. The Ponzi scheme

The bankruptcy court found that Mr. Singh was conducting a Ponzi scheme with the customers' investments. It found that Mr. Singh "willfully and knowingly paid prior investors with funds from new investors, as well as from commission checks." The court continued:

> A careful review of all of the evidence presented leaves this Court with no doubt that [Mr. Singh] engaged in a classic Ponzi scheme – luring invest[ments]/loans from innocent victims with the false promises of safe and wise future investments and high returns of 10% per annum – and repaying some or all of the early debt/investments back with the funds

9

lured by later invest[ments]/loans.

(Citation and footnote omitted).

## 2. The § 727(a)(2)(A) claim

The bankruptcy court held that the U.S. Trustee had satisfied § 727(a)(2)(A). First, it found that the money transferred from SVA's accounts was "property of the debtor." The court ruled that, under California's alter ego doctrine, SVA was Mr. Singh's alter ego because "although SVA once was a legitimate business operation, [Mr. Singh] increasingly used SVA for his own personal Ponzi scheme banking operation, especially as [Mr. Singh's] insurance commission based income declined. The existence of SVA became meaningless except as a tool to implement fraud." It noted that Mr. Singh "used the corporate bank account as his own de facto account, and not for any legitimate corporate purpose or enterprise." As such, the court concluded that the transfers involved Mr. Singh's property.

Second, the court agreed with the U.S. Trustee that Mr. Singh intended to defraud creditors by repaying the earlier investors with contributions from the later investors. The small interest payments that Mr. Singh paid to the investors "served no purpose other than to bolster, sustain, and lend credibility to [the] false impression" that Mr. Singh had invested the funds and that his operation was successful and profitable.

10

### 3. The § 727(a)(4) claim

The bankruptcy court next found that various omissions satisfied the false oath requirement under § 727(a)(4).

First, the court found that Mr. Singh made a false oath by omitting from his schedules references to assets and the transfer of monies received from the investors. The court also held that "[f]ailing to list the usury claim in his schedules was a false oath."

The bankruptcy court found that these omissions were material because they concerned Mr. Singh's business transactions, the discovery of assets, or the existence and disposition of his property.

Next, the court found that Mr. Singh knowingly made a false oath because he deliberately and consciously signed the inaccurate schedules.

Finally, the court ruled that Mr. Singh had a fraudulent intent because "[r]ather than submit forthright schedules as required in a bankruptcy case, he used his schedules to continue to perpetrate his fraudulent scheme, effectively seeking to evade making any further payments to his victims."

### 4. The § 727(a)(5) claim and claims against Mrs. Singh

The bankruptcy court ruled that the U.S. Trustee had failed to establish any claim against Mrs. Singh, finding that she did not have the requisite fraudulent intent. It also held that the U.S. Trustee did not meet his burden of proof under § 727(a)(5) as to either of the Singhs.

The bankruptcy court entered judgment against Mr. Singh on the §§ 727(a)(2)(A) and (a)(4) claims. Mr. Singh timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in denying Mr. Singh his discharge under §§ 727(a)(2)(A) and (a)(4).

## STANDARDS OF REVIEW

In an action for denial of discharge under § 727, we review: (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) mixed questions of law and fact de novo. *Searles v. Riley (In re Searles)*, 317 B.R. 368, 373 (9th Cir. BAP 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006).

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead

12

fish." *Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.)*, 262 F.3d 725, 729 (8th Cir. 2001) (citation omitted). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-75 (1985).

"[W]e review a bankruptcy court's evidentiary rulings for abuse of discretion, and then only reverse if any error would have been prejudicial to the appellant." *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 351 (9th Cir. 2012), *aff'd*, 604 F. App'x 552 (9th Cir. 2015) (citing *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 811 (9th Cir. 2008)). "We afford broad discretion to a district court's evidentiary rulings. . . . A reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict." *Id.* at 352 (quoting *Harper v. City of L.A.*, 533 F.3d 1010, 1030 (9th Cir. 2008)).

We apply a two-part test to determine whether the bankruptcy court abused its discretion. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. *Id.* Then, we review the bankruptcy court's factual findings for clear error. *Id.* at 1262. We must affirm the bankruptcy court's factual findings unless we conclude that they are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Id.*

**DISCUSSION**

**A.    The bankruptcy court did not err in holding that Mr. Singh made prepetition transfers under § 727(a)(2)(A) with the requisite intent.**

Section 727(a)(2) provides that the debtor is entitled to a discharge unless:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
> > (A) property of the debtor, within one year before the date of the filing of the petition[.]

§ 727(a)(2)(A).

"A party seeking denial of discharge under § 727(a)(2) must prove two things: '(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property.'" *In re Retz*, 606 F.3d at 1200 (emphasis added) (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)).

**1.    Disposition of property of the debtor**

Mr. Singh argues that the money that SVA used to make payments to creditors and himself was not "property of the debtor" within the meaning of § 727(a)(2). He also argues that the U.S. Trustee lacked standing to argue

14

the "alter ego" doctrine. We reject both arguments.

This Panel and other courts have held that "property of the debtor" includes not only property nominally held by the debtor, but also property held by the debtor's alter ego. "In bankruptcy, an alter ego is a nominal third party that has no substantive existence separate from the debtor, and property purportedly held by that third party is, therefore, the debtor's own property." *Chantel v. Pierce (In re Chantel)*, BAP No. AZ-14-1511-PaJuKi, 2015 WL 3988985, at *6 (9th Cir. BAP July 1, 2015), *aff'd*, 693 F. App'x 723 (9th Cir. 2017) (citations omitted).

> The imposition of the alter ego doctrine requires a broad inquiry:
>
> Factors for the trial court to consider include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other. No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied.

*Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1108-09 (2013) (citations omitted). The proponent of the alter ego doctrine must establish (1) a unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice. *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984).

In many cases, the alter ego doctrine is used to hold shareholders liable for the debts or conduct of a corporation. *See Toho-Towa Co.*, 217 Cal. App. 4th at 1107. But the doctrine can also be employed to determine whether a corporation or its shareholder is the true owner of property. *See Stout v. Marshack (In re Stout)*, 649 F. App'x 621, 623 (9th Cir. 2016) ("[P]roperty owned by a corporation may be considered a debtor's property where the corporation was the debtor's alter ego.") (considering § 547(b)); *Sethi v. Wells Fargo Bank, Nat'l Ass'n (In re Sethi)*, BAP No. EC-13-1312-KuJuTa, 2014 WL 2938276, at *7 (9th Cir. BAP June 30, 2014) (holding that the bankruptcy court did not make appropriate alter ego findings and that the creditor "was entitled to prevail on its § 727(a)(2) claim only if it proved that the property [debtor] concealed was her own property and not property of one of her corporations"); *Hoffman v. Bethel Native Corp. (In re Hoffman)*, BAP No. AK-06-1298-BZR, 2007 WL 7540947, at *6 (9th Cir. BAP May 9, 2007) (affirming the bankruptcy court's finding that the corporation was the debtor's alter ego because the debtor was the sole shareholder and director of the corporation; the corporation was undercapitalized; corporate formalities were ignored; and the debtor transferred the corporation's assets to his wife's corporation); *Kendall v. Turner (In re Turner)*, 335 B.R. 140, 147 (Bankr. N.D. Cal. 2005), *modified on reconsideration*, 345 B.R. 674 (Bankr. N.D. Cal. 2006), *aff'd*, 2007 WL 7238117 (9th Cir. BAP Sept. 18, 2007) ("[A]n entity or series of entities may not be created with no

16

business purpose and personal assets transferred to them with no relationship to any business purpose, simply as a means of shielding them from creditors. Under such circumstances, the law views the entity as the alter ego of the individual debtor and will disregard it to prevent injustice.") (considering § 544(b)); *Compton v. Bonham (In re Bonham)*, 224 B.R. 114, 116 (Bankr. D. Alaska 1998) (denying the debtor discharge under § 727(a)(2) because she had "disregarded the corporate formalities in operating both [corporations] and used the corporations as her own pocket book. She used them for an illegal and fraudulent purpose—to operate a Ponzi scheme. She transferred money freely and without rhyme or reason between the corporations and herself.").

In this case, the bankruptcy court was free to employ the alter ego doctrine in order to determine whether the transferred monies were "property of the debtor." The court found unity of interest and ownership: it said that "although SVA once was a legitimate business operation, [Mr. Singh] increasingly used SVA for his own personal Ponzi scheme banking operation . . . . The existence of SVA became meaningless except as a tool to implement fraud." Although Mr. Singh directed the investors to make their checks payable to SVA, the promissory notes that Mr. Singh drafted identified the borrower as "Pradeep Singh president of Secure Vision Associates[.]" This arguably made him the obligor under the promissory notes or at least blurred the distinction between SVA and

17

Mr. Singh personally. The court also found that failure to disregard the corporation would result in fraud or injustice: it said that "the company was simply a convenient conduit used by [Mr. Singh] to funnel the money he scammed from innocent victims." Neither of these findings is clearly erroneous. Thus, the bankruptcy court did not err in finding that the transferred assets were "property of the debtor" under § 727(a)(2)(A).

Mr. Singh incorrectly argues that the U.S. Trustee cannot assert an alter ego claim. Congress has specifically authorized the U.S. Trustee to "object to the granting of a discharge under [§ 727(a)]." *See* § 727(c)(1). That authorization would be hamstrung if the U.S. Trustee could not employ the alter ego doctrine when litigating the issue of whether certain assets are property of the debtor. Decisions limiting the standing of a chapter 7 or chapter 11 trustee to impose liabilities on alter egos are inapposite because the authority of the U.S. Trustee is different from that of a case trustee, and limitations on the attribution of liabilities under the doctrine do not necessarily apply when the doctrine is employed to attribute assets.

### 2. Intent to hinder, delay, or defraud

Mr. Singh challenges the bankruptcy court's finding that he intended to hinder, delay, or defraud creditors. "A debtor's intent need not be fraudulent to meet the requirements of § 727(a)(2). Because the language of the statute is in the disjunctive it is sufficient if the debtor's intent is to hinder or delay a creditor." *In re Retz*, 606 F.3d at 1200. Debtors rarely

admit harboring fraudulent intent, so courts may rely on circumstantial evidence, sometimes called "badges of fraud," to support a finding of intent.[4]

The bankruptcy court's determinations concerning the debtor's intent are factual matters reviewed for clear error. *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 729 (9th Cir. BAP 1999). We give great deference to the bankruptcy court's determinations of witnesses' credibility. *Anderson*, 470 U.S. at 575.

The bankruptcy court found that Mr. Singh's intent to defraud creditors was established by his operation of a Ponzi scheme: he used newly contributed funds to make payments to older contributors, thereby obscuring the falsity of his representation that he could repay creditors through a real and profitable business or investment. *Cf. Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 471 (Bankr. S.D.N.Y.

---

[4] The badges of fraud include:

> (1) a close relationship between the transferor and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the transferor Debtor was insolvent or in poor financial condition at the time; (4) that all or substantially all of the Debtor's property was transferred; (5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and (6) that the Debtor received inadequate consideration for the transfer.

*In re Retz*, 606 F.3d at 1200 (quoting *Emmett Valley Assocs. v. Woodfield (In re Woodfield)*, 978 F.2d 516, 518 (9th Cir. 1992)).

2015) ("Once it is determined that a Ponzi scheme exists, all transfers made in furtherance of that Ponzi scheme are presumed to have been made with fraudulent intent."). The court found that he was "motivated by an effort to convey to contributors a false impression that they are receiving funds because of a legitimate profit making opportunity." He gave investors the impression that he invested their funds and the funds were generating a profitable return. The court found that "[t]he fraudulent intent arises not from the act of repayment but from the false message communicated in the repayment – that the payment results from the return of an investment when no such investment exists."

Mr. Singh contends that he solicited loans rather than investments. We reject this argument for two reasons. First, the distinction is irrelevant. The existence of a Ponzi scheme does not depend on the form the schemer uses to raise money. In fact, the namesake of the Ponzi scheme, Charles Ponzi himself, raised funds by "borrowing money on his promissory notes." *Cunningham v. Brown*, 265 U.S. 1, 7 (1924). Second, the determination that the transactions were investments is a factual finding subject to clear error review. The court considered all of the evidence and reached conclusions that were not illogical, implausible, or without support in the record.

Mr. Singh argues that there was no Ponzi scheme because he operated a legitimate business (an insurance agency) which generated

commission income (until the insurance companies he represented cut him off because he was borrowing money from his customers). But the presence of some legitimate business activities does not necessarily negate the existence of a Ponzi scheme. If the revenues of the legitimate business are insufficient to pay the claims of creditors and investors, such that the schemer must solicit new investors to meet the claims of old investors, there is a Ponzi scheme. *See, e.g., Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528 (9th Cir. 1990). After all, Bernard Madoff had a legitimate business in the securities industry at the same time as he perpetrated the largest Ponzi scheme in history. *See* James Bandler, *How Bernie did it*, Fortune.com, http://archive.fortune.com/2009/04/24/news/newsmakers/madoff.fortune/index.htm (last visited Feb. 12, 2019).

Mr. Singh argues that the payments that the court characterized as § 727(a)(2) transfers were "made in the ordinary course of business" and that "the Court cannot make a determination as to which deposits were responsible for which payments." He offers no authority for the proposition, however, that the U.S. Trustee had to prove that every transfer to the investors came from newer investors' money. The court carefully considered the evidence provided by the parties, including competing expert testimony, and reviewed the dozens of transactions that occurred in the year preceding the Singhs' bankruptcy filing. It was not unreasonable

21

for the bankruptcy court to conclude that some of the monies paid to earlier investors came from later investors' funds. This finding is not clearly erroneous, and it is legally sufficient.

Accordingly, the bankruptcy court did not err in denying Mr. Singh's discharge under § 727(a)(2)(A).[5]

## B. The bankruptcy court did not err in its pretrial and evidentiary rulings.

Mr. Singh raises a litany of other purported errors. He believes that the bankruptcy court treated him unfairly. We are not convinced.

### 1. Deemed admissions

Mr. Singh contends that the bankruptcy court erred by allowing the U.S. Trustee to withdraw his deemed admissions, because Mr. Singh was relying on the U.S. Trustee's non-responses to support his first motion for summary judgment. The bankruptcy court did not abuse its discretion.

Civil Rule 36, made applicable in adversary proceedings by Rule 7036, provides that:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), **the court may**

---

[5] Because our affirmance of the bankruptcy court's § 727(a)(2)(A) holding provides a sufficient basis to affirm the judgment, we do not reach Mr. Singh's arguments concerning § 727(a)(4), including his arguments about the U.S. Trustee's reliance on the usury defense and his allegedly false oaths pertaining to bank accounts and asset transfers.

**permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party** in maintaining or defending the action on the merits.

Civil Rule 36(b) (emphasis added). A bankruptcy court has discretion to allow a party to withdraw its deemed admissions. *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985).

The bankruptcy court correctly determined that the case should be decided on the merits, rather than on a procedural error stemming from a failure of communication among counsel. It also correctly determined that the U.S. Trustee's late responses did not prejudice Mr. Singh. The responses were only six days late, and the court extended the discovery cut-off for three months after it allowed the U.S. Trustee to amend his responses. This negated any prejudice that Mr. Singh might have suffered. The burden of having to prove the merits of one's case (rather than prevailing by default) is not "prejudice" under Civil Rule 36(b). *See Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007). We discern no abuse of discretion.

**2.    The U.S. Trustee's expert**

Mr. Singh argues that the bankruptcy court erred in denying his motion in limine to exclude Mr. Arutyunyan's expert report. He also contends that the court should not have relied on his testimony at trial.

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill,

experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[T]he trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (citation omitted). Once the expert's testimony is deemed admissible, "the expert may testify and the fact finder decides how much weight to give that testimony." *Id.*

Mr. Singh challenges Mr. Arutyunyan's qualification as an expert because (1) Mr. Arutyunyan was biased since he works for the U.S. Trustee; and (2) Mr. Arutyunyan had never testified as an expert before. These arguments are meritless. No rule or doctrine prohibits expert testimony from an employee of a party or permits only experienced witnesses to give expert testimony. Mr. Singh was free to (and did) argue at trial that

24

Mr. Arutyunyan was biased and inexperienced, but those arguments go to the weight of his testimony, not its admissibility.

Mr. Singh believes that Mr. Arutyunyan's testimony had less weight that his witnesses' contrary testimony. When evaluating factual findings, "we give singular deference to a trial court's judgments about the credibility of witnesses. That is proper, we have explained, because the various cues that 'bear so heavily on the listener's understanding of and belief in what is said' are lost on an appellate court later sifting through a paper record." *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017) (citations omitted). An attack on credibility determinations rarely succeeds, because "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson*, 470 U.S. at 575.

The bankruptcy court was presented with conflicting testimony by Mr. Singh's and the U.S. Trustee's witnesses. The bankruptcy court simply found more credible and persuasive the expert and lay witness testimony presented by the U.S. Trustee. Mr. Singh only argues that the bankruptcy court should have preferred his version of the facts. The court's decision to believe the U.S. Trustee's evidence was not clear error. *Id.* at 573-75.

### 3.    Admission of the U.S. Trustee's exhibits

Mr. Singh argues that the bankruptcy court erred in "reopening" the U.S. Trustee's case after he had rested to allow the U.S. Trustee to offer exhibits for admission into evidence. Mr. Singh misconstrues the record.

The U.S. Trustee had not rested or otherwise waived his right to move to admit his exhibits. The parties had told the court that they would reach an agreement on the admission of exhibits during a recess, and that issue was pending. The U.S. Trustee's counsel's statement to the court that he had no further witnesses did not preclude the later admission of exhibits.

In any event, even if the U.S. Trustee had rested, the bankruptcy court always had discretion to reopen his case. *See Keith v. Volpe*, 858 F.2d 467, 478 (9th Cir. 1988) ("we have held that such reopening [a case to permit introduction of evidence] is within the discretion of the trial court, noting that the evidence requested should both be important as a matter preventing injustice and reasonably be available"); *Love v. Scribner*, 691 F. Supp. 2d 1215, 1235 (S.D. Cal. 2010), *aff'd sub nom. Love v. Cate*, 449 F. App'x 570 (9th Cir. 2011) ("A motion to reopen the record to submit additional evidence is addressed to the sound discretion of the Court."). The bankruptcy court did not abuse its discretion.

### CONCLUSION

The bankruptcy court did not err. We AFFIRM.